FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

99 MAY 26 PM 2: 58
U.S. DISTRICT COURT
N.D. OF ALABAMA

REGINA PARKER BRAND,           )
                               )
          Plaintiff,           )
                               )
v.                             )    Case No. CV-97-TMP-2162-W
                               )
GREENE COUNTY BOARD            )
Of EDUCATION,                  )
                               )
          Defendant.           )

ENTERED

### MEMORANDUM OPINION

MAY 26 1999

This cause is before the court on the motion for summary judgment filed by the defendant, Greene County Board of Education ("GCBOE"), on January 27, 1999. Essentially, defendant seeks dismissal of all of plaintiff's claims based on the Americans With Disabilities Act because, defendant contends, the plaintiff: (1) has failed to produce evidence that she has a disability; (2) has failed to prove that she is a "qualified individual"; and (3) has failed to demonstrate that she was unlawfully discriminated against because of a disability. This matter has been fully briefed and this court has considered the evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.



## I.  FACTS

Plaintiff Regina Parker Brand brought this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Plaintiff's claim arises from her employment as a teacher of vocational education for the Greene County Board of Education during two school years, 1993-94 and 1994-95.  Brand alleges that she has asthma, diabetes, and lupus.  She also complains of being allergic to a number of substances that can trigger asthma attacks, including chlorine.  Plaintiff is a registered nurse who has been employed at Bessemer Carraway Methodist Hospital in Bessemer, Alabama;  Druid City Hospital in Tuscaloosa, Alabama;  and the Tuscaloosa VA Medical Center.  Immediately prior to working for the GCBOE, Brand was employed as the quality assurance coordinator for the Greene County Nursing Home.  She also has worked as a consultant for other health care agencies.

While working at the nursing home, Brand applied for a teaching position with the GCBOE, seeking a position in the Health Occupation Department of the GCBOE's vocational school.  When interviewing for the job, Brand toured the vocational school facility with J.J. Purter, the director of the vocational center. She noticed dust in the rooms in which she would teach if hired. Purter told her that the janitor would clean the building and that she would be able to control the air conditioning and ventilation

2

system within the building if she worked there.  She told Purter:
"I have some respiratory problems so I have to make sure that my
air is clean."  She told Purter that her respiratory problem was
asthma.  The building in which Brand would be working included her
own office, one large main room, a classroom, and a lab.  A washer
and dryer were located in a separate room off the lab.  Brand saw
the washer and dryer when she toured the facility, and did not ask
any questions or make any comments about the laundry area.

After touring the department, Brand applied for employment
with the GCBOE.  In her application, she did not list or mention
any disabilities, health problems, or health concerns.  On the
application, Brand listed her general health as "good" (choosing
from excellent, good, fair, and poor); and, when asked to list any
handicaps, indicated "none."  Brand was the only applicant for the
position and was hired by the BCBOE to begin teaching in the fall
of 1993.  After being hired, Brand never submitted any notice from
any doctor seeking any special accommodation at the workplace, nor
did she tell Purter or any supervisor that she needed special
accommodation.  During her second year of employment when Purter
was in a consulting role and Helen Hughes was "in charge" of the

vocational school, Brand never told Hughes that she had asthma or that she had suffered any asthma attacks at school.[1]

Brand testified that on some occasions the building was dusty and aggravated her respiratory problems.  She made no complaint to any board member or supervisor, but requested that the janitor clean the building.   She admitted that the janitor usually responded by cleaning the area of dust.  Brand does not dispute that the ventilation system in the building where she worked was the "best functioning" system in the school, and that the janitor cleaned Brand's room better than he cleaned other rooms.

Brand testified that at some point about mid-year, the teacher from the cosmetology building, Toni Love, began to use the washer and dryer in Brand's department.  Love was required by state health department regulations to use chlorine when laundering towels for use in her classes.  Brand complained that the chlorine used in the laundry caused her to have asthma attacks.   She mentioned the problem in a staff meeting, and after that meeting the cosmetology instructor "tried" to avoid doing laundry while Brand was in the building.  After Brand complained, Love did most of the laundry in a different building, where Hughes taught home economics.  When she

---

[1]     Brand did tell Hughes that she had lupus, but Brand does not attribute any of her absences to lupus, nor does she allege that the lupus substantially limits any major life activity or requires any special accommodation from her employer.

4

had to use the washer in Brand's building, she waited until after 3 p.m. In addition, she used Brand's washer and dryer only when the other washer was in use. Brand does not remember which days, or how many days, she missed because of the use of chlorine.

During the 1993-94 school year, Brand was absent on 13 days. Brand missed two days in January, on January 10 and 26, 1994, because of "pulmonary congestion." She attributes that illness to "the chemicals in the air" at school. She has not offered any evidence from any expert or doctor to substantiate the reason for the absence.[2] Brand missed another day on February 9, 1994. Brand says she had bronchitis, but has not offered any medical records or evidence to support that claim, except for her own testimony. On February 15, Brand applied for sick leave six days in advance of her next absence on February 21, 1994. She does not remember why she was absent on February 21, but thinks she may have been scheduled for some tests for sleep apnea. Brand next requested sick leave for the following day, on February 22, 1994, and then again sought sick leave for the three following days, February 23, 24, and 25. Brand testified that she was hospitalized during this time with pneumonia. Brand has offered no evidence to support her

---

[2]     Brand testified that she obtained doctor's excuses for her absence, but that the school told her the excuses were not necessary. Brand does not allege, however, that the excuses or notes from her doctors indicated that there was any connection between the conditions in the school and her asthma attacks.

5

claim that the pneumonia was caused by or exacerbated by any conditions at the school. Brand took one more day of sick leave during the 1993-94 school year. She was absent May 6, 1994, but does not remember the nature of the illness that prevented her from teaching. In addition to her absences for personal illness, Brand requested and received two absences for professional leave and two for personal leave. Brand has not offered any evidence from any doctor that would indicate the causes of any illness that resulted in any of the absences.

At the end of the 1993-94 school year, the GCBOE voted not to renew Brand's contract, and notified her of that decision by letter dated May 17, 1994. Before the 1994-95 school year began, however, Brand was offered a new one-year contract and returned to her teaching job in the fall of 1994. Brand has stated that the laundry problems continued in the new school year, but admits she did not write the superintendent, any board member, or any other supervisor to request a change in the conditions. She spoke with the superintendent once by phone, but did not request any change or complain about any conditions at her workplace.

During the 1994-95 school year Brand testified that she was absent 48 days during her ten-month contract. She took six days for professional leave, one for personal leave, and 41 for personal illness. On August 11 and 12, 1994, Brand took two days of

6

professional leave to attend a workshop.  On August 15 of 1994, Brand took a day of sick leave.  She does not attribute the illness to the conditions at the school.  Brand was absent again on September 16, 1994, this time for personal leave, which Brand says was "probably a religious conference."  On September 28 and 29, 1994, Wednesday and Thursday, Brand took two more days of sick leave, but does not remember the reason for the absences.  About two weeks later, Brand took another day of sick leave on Friday, October 14, 1994.  She also does not recall the reason for that absence.  Brand was absent again, on sick leave, November 22 and 23, 1994, the Tuesday and Wednesday before the Thanksgiving holiday.  She does not recall the reason for those absences. Brand's next absence came on Wednesday, December 14, 1994, and Brand does not recall whether her illness on that day was related to any conditions at the school.  In January of 1995, Brand was absent on Friday the 20th, Monday the 23rd and Tuesday the 31st. These absences, Brand states, were related to respiratory problems, but she does not recall what brought on the problems.  On February 1, Brand requested professional leave for February 13, 14, 15, and 16 in order to attend a convention.  Brand was absent on sick leave immediately following her four days at the convention, and missed school on February 17, 20, 21, 22, 23 and 24.  Brand took sick leave again on February 27 and 28, and March 2 and 3, 1995, for

7

reasons she cannot recall. Brand next took sick leave on March 22, 23, and 24. She does not remember the reason. On April 5, Brand requested sick leave for Monday, April 19, but does not remember the reason. Her next sick leave request covers May 1 (Monday), 3 (Wednesday), 8 (Monday), 19 (Friday), 25 (Thursday), and 26 (Friday). She attributes respiratory problems for the first three days missed in May, and missed the later dates because she had medical tests that ultimately determined she would need surgery for a cyst on her urethra. After the school year ended, and just a few days before her 10-month contract expired, Brand was absent an additional 11 days due to surgery for urethra diverticulum.

During Brand's yearly evaluations, Purter discussed with Brand her excessive tardiness and absenteeism. In April of 1995, prior to the end of the school year, the GCBOE voted not to renew Brand's contract and notified her of the action by letter on May 2, 1995. Subsequently, the GCBOE Superintendent, Joseph Dantzler, reviewed the plaintiff's file and determined that he would not recommend that Brand be offered a new contract because of her excessive number of absences. Dantzler considered that Brand had taken days off for personal leave, for professional leave, and also for personal illness. Brand admits she never told Dantzler or anyone of the GCBOE of her alleged disability or of the need for any accommodation. Furthermore, Dantzler testified that he was not

8

aware, when he decided not to recommend Brand for renewal, of Brand's alleged disability.

## II.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving

9

party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

10

Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all

11

justifiable inferences are to be drawn in his favor. <u>Anderson</u>, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  Discussion

Plaintiff's only claim arises from the Americans with Disabilities Act, 42 U.S.C. § 12101 <i>et seq.</i> ("ADA").  The ADA prohibits any "covered entity" from discriminating "against a qualified individual with a disability because of the disability of such individual...."  42 U.S.C. § 12112(a).  In order to support a claim that the GCBOE violated this section, three criteria must be met: first, Brand must show that she has a disability; second, Brand must show that she is "qualified" for the job; and, third, Brand must show that the school board's refusal to renew her contract constitutes unlawful discrimination that is based on her disability.  <u>See</u> <u>Swain v. Hillsborough Cty. School Bd.</u>, 146 F. 3d 855, 857 (11th Cir. 1998); <u>Tyndall v. National Educ. Ctrs.</u>, 31 F.3d 209, 212 (4th Cir. 1994).  The issue before this court is whether the GCBOE violated the ADA by failing to renew the expired contract of a non-tenured teacher because she had been frequently absent from work, due in part to her asthma.

A. <u>Plaintiff Has Failed To Demonstrate That She Suffers From a 'Disability' Within The Meaning Of the ADA.</u>

Under the ADA, a person may be disabled if he or she meets one of the three definitions of disability: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Under the first definition of a disability, "major life activities" have been deemed to include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). For an impairment to "substantially limit" a major life activity, the disabled person must be unable to perform, or must be significantly limited in the ability to perform, an activity, as compared to an average person. <u>See</u> <u>Terrell v. USAIR</u>, 132 F.3d 621, 625 n.4 (11th Cir. 1998); <u>McKay v. Toyota Mtr. Mfg.</u>, 878 F. Supp. 1012, 1014 (E.D. Ky. 1995) <u>aff'd</u>, 110 F.3d 369 (6th Cir. 1997).

In order to meet the second definition of disabled, the plaintiff must show that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." <u>McKay</u>, 878 F. Supp. at 1014-15.

13

The third definition of disability also protects individuals who are "regarded" as disabled. This protection is triggered only where the plaintiff demonstrates that the employer "treated [her]... as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l).

1. Plaintiff Has Not Demonstrated That She Is Substantially Limited In a Major Life Activity.

Plaintiff asserts that she is disabled and entitled to protection under the ADA because she suffers from asthma.[3] In essence, she alleges that asthma attacks substantially limit her ability to work. This court first notes that the plaintiff does not offer any evidence, aside from her own testimony, that she has been diagnosed with any disease or impairment, much less that any disease or impairment causes her to be unable to perform any "major life function." To the contrary, Brand admitted that she stated to the GCBOE, through her application for employment, that she was in good health and had no handicaps. She further testified that she was able to maintain "great attendance" at her previous job.

The only medical evidence offered by Brand are records apparently obtained from her urologist, which pertain to her

_____

[3] While Brand also alleges that she has diabetes and lupus, she has not alleged that those illnesses have in any way limited her ability to perform any major life activity.

14

surgery for a urethral cyst.  Those records recite that Brand has "numerous allergies" and has a past medical history of diabetes, lupus, and asthma.  There is no evidence that the doctor who prepared those records had any personal knowledge of the patient's history beyond what Brand told him. A handwritten note included in those records includes the word "chlorine" near a notation regarding allergies.  Nothing in the records indicates that the doctor treating her cyst diagnosed, treated, or even was familiar with the illnesses she alleges constitute a disability.  Brand simply asserts that the chlorine and "chemicals in the air" used in laundering towels in a separate area of the school building where she taught caused such severe pulmonary distress that she could not attend work.  Brand thereby argues that she is disabled under the ADA.  Without, at the very least, corroborating evidence, Brand's bald assertion is insufficient to support her claim that she is disabled.[4]

It is well settled that merely proving the existence of a physical impairment, without addressing the attendant limitations

---

[4]     The affidavit of Toni Love, the cosmetology teacher, states that she "believed" that Brand had asthma and that she witnessed Brand having an asthma attack.  However, even if this were sufficient to establish that Brand suffered from asthma, and the court declines to determine that it is, the fact that an employee has asthma, without evidence that it "substantially limits" a "major life function" does not meet the definition of a disability.

15

on major life activities, is insufficient to prove a disability under the ADA.  Standard v. A.B.E.L Services, 161 F.3d 1318, 1327 (11th Cir. 1998).  The regulations governing the administration of the ADA specifically state that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i).  In determining whether an individual seeking protection under the ADA is substantially limited by her impairment, the court is directed to consider "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment."  29 C.F.R. § 1630.2(j)(3)(ii)(B).  See also, Swain, 146 F.3d at 857.

In Swain, a teacher who suffered from incontinence brought an ADA action against the school board because the board-mandated change in her daily class schedule no longer permitted her sufficient opportunities to go to the restroom.  146 F.3d at 856-58.  The Eleventh Circuit Court of Appeals determined that Swain had simply made "the vague assertion that she is unable to perform any job that precludes her from having regular access to a restroom."  Id. at 858.  The court rejected Swain's contention because she failed to show that she was unable to perform a broad range of jobs.  Id.

16

The clear precedent of Swain mandates that Brand, in order to prevail, must show more than her inability to perform the job of vocational school teacher in the assigned classroom at the GCBOE, she must demonstrate that she "cannot perform a broad range or class of jobs." Swain, 146 F.3d at 858. In this case, plaintiff's own work history and testimony belie this element. Brand has shown that she was qualified for, and successful at, several previous jobs that utilized her nursing background. Brand has shown that she is experienced as a nurse, consultant, administrator and teacher. The only job, other than the teaching job at issue, that Brand claims she could not perform was her job in the smoke-filled rooms of a veterans hospital.

2. Plaintiff Has Failed to Show That She Has a Record Of a Disability.

Plaintiff next argues that she meets the second definition of being disabled based upon (1) her assertion that she was "medically retired" from the veterans hospital, and (2) the documents from her urologist that refer to asthma, lupus, and allergies. Brand claims that this evidence establishes that she has a "record of such impairment".

This court has only Brand's testimony to support her allegation that she was retired as disabled from the veterans hospital. She testified that her problems at the veterans hospital

17

arose from the environment of heavy cigarette smoke, but does not indicate that her retirement evidences any broader range of allergic asthma.  Assuming, *arguendo*, that Brand has demonstrated that she was retired as disabled from the veterans hospital, that fact simply does not show the existence of a disability cognizable under the ADA.

A designation of a disability for a purpose other than the application of the ADA "does not guarantee that the individual will satisfy the definition of 'disability'" under the ADA.  29 C.F.R. § 1630.2(k)(App.).  Even if Brand's testimony were sufficient to establish that Brand suffers from asthma and that the cigarette smoke at the veterans hospital so aggravated the asthma that she was deemed disabled from working there, that evidence alone does not rise to the level necessary to satisfy the ADA definition of disability.

Brand's reliance on her urologist's records is likewise misplaced.  The documents from the urologist are both conclusory and hearsay, and appear to reflect nothing more than what the plaintiff told her doctor.  Similarly, even if the urology records show that Brand has asthma and is allergic to chlorine, that evidence falls far short of showing that the impairment indicated in the record is one that "substantially limits one or more of the individual's major life activities."  There is simply no testimony

18

to support Brand's claim that the infrequent use of chlorine in a washing machine in a separate room off her lab caused Brand to be unable to attend work. Consequently, plaintiff's evidence is not sufficient to meet the second definition of a disability.

3.   Plaintiff Has Failed To Show That She Was Regarded By the Defendant As Having a Disability.

The final method by which Brand might attempt to show that she is disabled is by showing that she was "regarded as" having a disability.   She has admitted that she never told the superintendent or anyone on the school board that she had asthma. Clearly, she denied the existence of any serious health problems when she applied for the job.  The GCBOE has offered the affidavit of the superintendent, who had never heard that Brand had any of the illnesses she claims make her disabled.  The GCBOE also has offered the affidavits of coworkers who testify that they never saw the plaintiff suffer an asthma attack, and did not believe that she actually had the illness she complains of.  In essence, all but one of the co-workers or supervisors from whom testimony has been offered either knew nothing of Brand's condition or regarded Brand as being a "complainer" who feigned illness.  Nothing in the record supports the contention that Brand was "regarded" as having a disability.

The evidence is clear that, even though Brand may suffer from the various illnesses about which she complains, she has not met her burden of demonstrating that she is disabled under the ADA. As a result, defendant's motion for summary judgment is due to be granted because plaintiff has failed to meet the first element of an ADA claim.

B.   Plaintiff Has Failed To Demonstrate That She Is a
     Qualified Individual Protected By the ADA.

Under the ADA, only persons who are "qualified" for the job in question may state a claim for discrimination.   The ADA defines "qualified individual with a disability" as:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8).   The Supreme Court has interpreted this provision to require that the person seeking remedy under the ADA be "able to meet all of a [job's] requirements in spite of [her] handicap." Southeastern Comm. College v. Davis, 442 U.S. 397, 406, 99 S. Ct. 2361, 2367, 60 L. Ed. 2d 980 (1979).   The plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation.   Tyndall, 31 F. 3d at 213.

20

In Tyndall, a college professor who suffered from lupus was terminated because of her frequent absences. Id. The parties did not dispute that Tyndall's lupus was a "disability" covered under the ADA. Id. at 212. Tyndall's employer knew that she had lupus when they hired her. Tyndall was required to teach the assigned courses, during assigned class periods, and to be available to meet with students on campus. Id. at 213. Evaluations of Tyndall's teaching ability ranked her as "good" or "excellent." However, in spite of the requirement of regular attendance, Tyndall missed approximately 40 days of work during a seven-month period. Id. The college attempted to accommodate Tyndall's lupus by permitting her to take sick leave, arrive late, leave early, and take breaks. Even with these accommodations, Tyndall's attendance did not improve. Id. at 214. Many of her absences were caused by her son's illness, rather than her own disability. Id. The court held that "because Tyndall's attendance problems rendered her unable to fulfill the essential functions of her job," even when the employer made reasonable accommodations for the disability, she was not a "qualified individual with a disability" as required by § 12112(a) of the ADA. Id.

In reaching the conclusion that Tyndall was not "qualified," the court noted that in addition to possessing the necessary job skills, an employee "must be willing and able to demonstrate these

21

skills by coming to work on a regular basis." Id. at 213. The court further stated that except where an employee can effectively work from home, an employee who fails to come to the workplace "cannot perform any of his job functions, essential or otherwise." Id., quoting Wimbley v. Bolger, 642 F. Supp. 481, 485 (W.D. Tenn. 1986), aff'd, 831 F.2d 298 (6th Cir. 1987).

The case at bar is strikingly similar to Tyndall. Brand was terminated because of her frequent absences. She told a supervisor that she had respiratory problems before she was hired. Her job required that she teach her students in her classroom during the assigned school hours. Her job could not be performed from home. In spite of the attendance requirements, Brand missed almost 50 days of work during the 1994-95 school year. Even after the cosmetology teacher moved most of her laundry to another building and tried to accommodate Brand by doing the laundry after 3 p.m., Brand's attendance did not improve. Like Tyndall, many of Brand's absences were not related to her alleged disability.[5] These facts compel the conclusion that, like Tyndall, Brand is not "qualified" for her

---

[5]      Other absences that Brand "believes" were related to the school environment logically could not have been. For example, Brand was absent February 27 and 28 of 1995, allegedly for respiratory problems brought on by the school environment. However, Brand had been absent for six working days leading up to that absence, and consequently had not been at the school in more than 10 days.

teaching position because she is not able to attend school, which clearly is an essential function of any high school teacher's job.

The Tyndall court is not the first or the only court to hold that attendance is an essential function of a job.  The Eleventh Circuit Court of Appeals has held that "while perfect attendance is not a necessary function of all jobs, reasonably regular and predictable attendance is necessary for many." Jackson v. Veterans Admin., 22 F.3d 277, 279 (11th Cir. 1994), quoting Walders v. Garrett, 765 F. Supp. 303, 309 (E.D.Va. 1991), aff'd, 956 F.2d 1163 (4th Cir. 1992).[6]  In Carr v. Reno, 23 F.3d 525, 529 (D.C. Cir. 1994), the court held that "coming to work regularly" is an essential function of any government job.  In Law v. United States Postal Service, 852 F.2d 1278, 1279-80 (Fed. Cir. 1988), the court held that an employer is "inherently entitled to require an employee to be present during scheduled work times."  An employer has the right to require any employee to meet "some threshold of both attendance and regularity." Walders, 765 F. Supp. at 309-10. Similarly, in Santiago v. Temple University, the court recognized that "attendance is necessarily the fundamental prerequisite to job qualification" and that "the law does not protect absenteeism or

---

[6]     Jackson interpreted the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., rather than the ADA.  However, cases construing the Rehabilitation Act provide authority for the interpretation of the ADA.  Pritchard v. Southern Co. Services, 92 F.3d 1130, 1134 (11th Cir. 1996).

employees who take excessive leave and are unable to perform the prerequisites of their job." 739 F. Supp. 974, 979 (E.D. Pa. 1990), aff'd, 928 F.3d 396 (3d Cir. 1991).

In a more recent opinion based on the ADA, the Fifth Circuit Court of Appeals recognized that, where a bank employee had duties that could not be done at home, it was essential that the employee "be in the office, regularly, as near to normal business hours as possible." Hypes v. First Commerce Corp., 134 F.3d 721, 726 (5th Cir. 1998). Consequently, it is well settled that an employee who fails to meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA.

Brand has not shown that she is able to meet the attendance requirements of the job of vocational school teacher, with or without a reasonable accommodation. Even though she claims that a change in the use of the laundry would alleviate her asthma attacks, she admits that most of her absences were not related to the conditions at the school. Furthermore, her attendance worsened, rather than improved, after the cosmetology teacher began to do laundry in the other building or after hours as often as was possible. For these reasons, Brand is not a "qualified individual" who is entitled to protection under the ADA and, therefore, defendant's motion for summary judgment is due to be granted.

24

C.   Plaintiff Has Failed to Show That the Defendant
     Refused to Renew Her Contract Because Of Her Alleged
     Disability.

Even if plaintiff had shown that she has a "disability" within

the meaning of the ADA, and that she is "qualified" to perform her

duties with reasonable accommodation, summary judgment would be due

to be granted for the defendant for the additional reason that

plaintiff has failed to demonstrate that her non-renewal was the

result of unlawful discrimination based on her disability.   Brand

has offered no evidence of discrimination, nor has she alleged that

the GCBOE had any intent to discriminate.   She asks this court to

infer a discriminatory intent from a statement made by Purter at a

staff meeting in which she complained about the laundry situation:

> ... because at that meeting Mr. Purter asked me, 'don't
> you wash at home?'   And I said, 'No, sir,' ... and he
> made a remark like, 'well, you will.'

Even if the statement could be construed to evidence discriminatory

intent, it is clear that the discriminatory intent did not cause the

nonrenewal.   The statement was made during the 1993-94 school year,

after which Brand's contract was renewed.   Therefore, the statement

is too remote from the nonrenewal to be considered evidence of an

intent to discriminate.

In addition, the facts of this case create a presumption of

nondiscriminatory intent that plaintiff has failed to rebut.   Brand

contends that Purter's recommendation that her contract not be

25

renewed was based on his knowledge of her disability.  However, Brand also contends that she told Purter of her disability before he hired her.  This fact alone creates a "strong inference" of nondiscrimination.  See Tyndall, 31 F.3d at 215 ("An employer who intends to discriminate against disabled individuals or holds unfounded assumptions that such persons are not good employees would not be apt to employ disabled persons in the first place.").

Moreover, Brand does not dispute that the ultimate decision not to renew her contract in 1995 was made by Superintendent Dantzler, and was based solely on Dantzler's review of Brand's attendance record at a time when he had no knowledge of her asthma or other medical conditions.

For all of these reasons, the plaintiff has failed to demonstrate that the employer unlawfully discriminated against her on the basis of her alleged disability.  As a result, the GCBOE's motion for summary judgment is due to be granted for this additional reason.

## IV.  Conclusion

Based on the foregoing undisputed facts and legal conclusions, the court determines that the motion for summary judgment filed by the Greene County Board of Education is due to be GRANTED and this action DISMISSED WITH PREJUDICE.

26

A separate order will be entered in accordnce with the findings set forth herein.

DATED this 26th day of May, 1999.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE